UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| PATENT HOLDER, LLC, <br><br> Plaintiff, <br><br> v. <br><br> LONE WOLF DISTRIBUTORS, INC. and LONE WOLF R&D, LLC, <br><br> Defendants. | Case No. 2:17-cv-00452-DCN <br><br> **MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

The Court held a *Markman* hearing on August 21, 2018, to interpret the claims of Plaintiff Patent Holder, LLC's ("Patent Holder") patent (United States Patent No. 9,062,700 ("'700 patent")). The Court's interpretation is set forth below.

## II. BACKGROUND

### A. Procedural Background

On August 11, 2017, Patent Holder filed suit against Defendants Lone Wolf Distributors, Inc, and Lone Wolf R&D, LLC (collectively "Lone Wolf"). In this suit, Patent Holder seeks damages and a permanent injunction against Lone Wolf for infringement of its '700 patent. Patent Holder alleges that Lone Wolf manufactures products which are covered by one of more claims and designs of the '700 patent. Lone

Wolf denies infringement. The Court now engages in the first step of the two-part infringement analysis: claim construction.

### B. Patent at Issue

The sole patent at issue in this case is the '700 patent. The '700 patent discloses "a firearm enhanced trigger control connector." Dkt. 43-2, at 1, *abstract.* In layman's terms, the '700 patent covers an after-market firearm part that when placed in a handgun shortens the distance that the trigger must travel to discharge the firearm. Said differently, with such a product installed, the space from where a person begins to pull, or squeeze, the trigger, and the point at which the trigger actually engages the firing pin is shortened. The purpose of this device is to increase precision and accuracy in shooting.

### III. LEGAL STANDARD

The Court engages here in the first step of the two-step infringement analysis— determining the scope and meaning of the patent claims at issue. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370, (1996). The construction of a patent is a matter of law for the Court to decide. *Id.*; *see also O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008) ("When the parties present a fundamental dispute regarding the scope of a claim term, it is the court's duty to resolve it."). At the same time, the Court is not required to construe every limitation present in a patent's asserted claims. *O2 Micro Int'l Ltd*, 521 F.3d at 1359. "In some cases, the ordinary meaning of claim language . . . may be readily apparent even to lay judges, and claim construction in such cases involves little more

than the application of the widely accepted meaning of commonly understood words." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed.Cir.2005) (en banc).

To interpret the claims, the Court must look first to the intrinsic evidence of record, i.e., the patent itself, including the claims, the specification and, if in evidence, the prosecution history. *See Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). Such intrinsic evidence is the most significant source of the legally operative meaning of disputed claim language. *Id.*

In evaluating the intrinsic evidence, the Court examines first the words of the claims themselves, both asserted and nonasserted, to define the scope of the patented invention. *Id.* Although words in a claim are generally given their ordinary and customary meaning, a patentee may choose to be his own lexicographer and use terms in a manner other than their ordinary meaning if the special definition of the term is clearly stated in the patent specification or file history. *Id.*

Intrinsic evidence also includes the prosecution history of the patent, if in evidence, which includes the complete record of all the proceedings before the Patent and Trademark Office (PTO), including any express representations made by the applicant regarding the scope of the claims. As such, the record before the PTO is often of critical significance in determining the meaning of the claims. Included within an analysis of the file history may be an examination of the prior art cited therein. *Id.*

In most situations, an analysis of the intrinsic evidence alone will resolve any ambiguity in a disputed claim term. In such circumstances, it is improper to rely on extrinsic evidence.

# IV. ANALYSIS

At issue here are two phrases in Claim 1, and one phrase in Claim 8 of the '700 patent. While there are slight nuances between the parties' proposed constructions, broadly speaking, Patent Holder alleges that the Court should construe each disputed phrase by its plain and ordinary meaning with limited alterations, or simply leave each as written. Lone Wolf, on the other hand, asserts that each phrase is invalid for indefiniteness. Alternatively, Lone Wolf's proposed construction of each disputed term seeks to clarify areas it believes are—as currently drafted—impermissibly vague and must be altered in order to aid a jury in determining infringement. The Court will address each disputed claim in turn.

As a threshold matter, however, the Court must discuss the principle of indefiniteness as it is Lone Wolf's main argument in this case.

Challenges of indefiniteness are often determined at summary judgment rather than claim construction; however, this is not a hard and fast rule. Whether to decide the issue of invalidity based on indefiniteness at the claim construction stage depends on the circumstances and claims at issue in a given case.

The Federal Circuit has made clear that indefiniteness is a legal question that district courts may decide prior to trial. *Personalized Media Commc'ns, LLC v. Int'l Trade Comm'n*, 161 F.3d 696, 705 (Fed. Cir. 1998) ("A determination of claim indefiniteness is a legal conclusion that is drawn from the court's performance of its duty as the construer of patent claims."). Whether that occurs at claim construction or summary judgment is a matter within a court's discretion. *See e.g. Indus. Tech. Research*

*Inst. v. LG Elecs. Inc.*, No. 3:13-CV-02016-GPC, 2014 WL 6907449, at *3 (S.D. Cal. Dec. 8, 2014) (holding that a District Court "has discretion as to when to determine indefiniteness during patent case proceedings"). Other courts in this Circuit have recognized that "it is appropriate for [district courts] to address indefiniteness issues at the claim construction stage." *Eon Corp. IP Holdings LLC v. Aruba Networks Inc.*, 2014 WL 938511, at *3 (N. D. Cal. Mar. 5, 2015); *see also Brandywine Commc'ns Techs., LLC v. AT & T Corp.*, No. C 12-2494 CW, 2014 WL 1569544, at *13 (N. D. Cal. Apr. 18, 2014).

Of the three disputed claims in this case, Lone Wolf claims that all three are indefinite. Frankly, if the Court decided not to take up indefiniteness now, the Court would not rule on any of the issues and reopen the exact same discussion at summary judgment. Furthermore, the parties have begun briefing summary judgment—albeit on a slightly different basis—and requiring them to "re-brief" these issues would be redundant. In the interest of judicial economy and efficiency, the Court will take up indefiniteness at this time.

The same principles that generally govern claim construction are applicable to determining whether allegedly indefinite claim language is subject to construction. *Praxair, Inc. v. ATMI, Inc.*, 543 F.3d 1306, 1319 (Fed. Cir. 2008). Section 112(b) of the Patent Act governs definiteness. This section requires inventor(s) to provide "one or more claims particularly pointing out and distinctly claiming the subject matter which the inventor or a joint inventor regards as the invention." 35 USCS 112(b). Issued U.S. patents are presumed definite. 35 U.S.C. § 282. Definiteness challengers, like Lone Wolf,

MEMORANDUM DECISION AND ORDER - 5

bear the burden to prove indefiniteness by the heightened standard of clear and convincing evidence. *Id.*

As the Supreme Court noted in *Nautilus II*, all patent claims suffer from "the inherent limitations of language," and, thus, definiteness requires only that claims "be precise enough to afford clear notice of what is claimed." 134 S. Ct. at 2128–29. This balance allows "[s]ome modicum of uncertainty" to "ensur[e] the appropriate incentives for innovation," while providing a "meaningful definiteness check" to prevent inventors from purposefully "inject[ing] ambiguity into their claims." *Id.* (quotations omitted). Thus, "a patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus II*, 134 S. Ct. at 2124.

As the Federal Circuit noted in *Halliburton Energy Servs., Inc. v. M-I LLC*:

> Because claims delineate the patentee's right to exclude, the patent statute requires that the scope of the claims be sufficiently definite to inform the public of the bounds of the protected invention, i.e., what subject matter is covered by the exclusive rights of the patent. Otherwise, competitors cannot avoid infringement, defeating the public notice function of patent claims.

514 F.3d 1244, 1249 (Fed. Cir. 2008). The Supreme Court has also explained that a patent does not satisfy the definiteness requirement of section 112 merely because "a court can ascribe *some* meaning to a patent's claims." *Nautilus II*, 134 S. Ct. at 2130; *see also* n. 8 (indicating that there is an indefiniteness problem if the claim language "might mean several different things and 'no informed and confident choice is available among

the contending definitions'") (quoting *Every Penny Counts, Inc. v. Wells Fargo Bank, N.A.*, 4 F.Supp.3d 1286, 1291, 2014 WL 869092, at *4 (M. D. Fla. Mar. 5, 2014)).

The Court turns next to the disputed claims and will discuss invalidity as to each, as well as the parties proposed constructions.

1. Guide Lip

| Claim | Term | Plaintiff's Proposed Construction | Defendants Proposed Construction |
|---|---|---|---|
| Claim 1 | "guide lip" | The ridge extending up from rear end of torso | Invalid as indefinite and having no antecedent basis in the specification – the term only appears in the claims.<br><br>Otherwise, Defendants proposed "The "guide angle 224". |

The first disputed term—"guide lip"—is found in Claim 1 as follows: "A firearm enhancing trigger control connector, consisting essentially of: a torso comprising a **guide lip** positioned at a first predetermined angle approximately between 68 degrees and 78 degrees with respect to said torso, said **guide lip** containing a trigger bar of a firearm . . . ." Dkt 43-2, at 4:53-57 (emphasis added). The guide lip is depicted as "224" in the figures below from the '700 patent. The purpose of this guide lip is to restrain the trigger bar of the firearm (as depicted in figure 4a below).



Fig. 3        Fig. 4a

Lone Wolf argues that this term is indefinite because the term is never defined in the specifications of the patent, but only listed in the claims. Patent Holder counters that a specific definition is unnecessary considering the explanations of the prior art.

In the '700 patent's "Description of the Preferred Embodiment" section there are numerous references to former trigger control mechanisms and the "lip" feature that served the same purpose as the "guide lip" does in the '700 patent. *See e.g.* Dkt. 43-2, at 2:54-57, 3:4-6. Importantly, the '700 patent remedied a problem created by the lip in the prior art. The lip in the prior art was positioned at a 90-degree angle which caused an obstruction when a user pulled the trigger. By altering the degree of the lip (to between 68 and 78 degrees) Patent Holder eliminated this issue. Patent Holder alleges that, because these references make abundantly clear what the guide lip is, the term is not indefinite. The Court agrees.

The Supreme Court has explained that a claim is indefinite if it does not "afford clear notice of what is claimed," *Nautilus II*, 134 S. Ct. at 2128, and "might mean several different things and no informed and confident choice is available," *Id.* at 2130, n.8

MEMORANDUM DECISION AND ORDER - 8

(internal citation and quotations marks omitted). Even though "guide lip" is not defined in the specifications, there is an "informed and confident choice" available that clearly recognizes the guide lip as the angle 224 in the specifications and drawings of the '700 patent. Although "guide lip" in isolation appears somewhat vague, the intrinsic record—the explanations and figures in the '700 patent—make clear that this is the feature depicted as "224." A patent is presumed valid, 35 U.S.C. § 282(a), and a simple reading of the '700 patent clears up any confusion concerning the guide lip. The Court therefore finds that "guide lip" is not invalid for indefiniteness.

Indefiniteness aside, both parties submit proposed definitions of "guide lip" for the Court's consideration. Patent Holder proposes that the Court construe "guide lip" as "the ridge extending up near the rear end of the torso." This definition, however, creates more confusion than clarity. Like "lip," none of the proposed words are explicitly defined. In particular, the word "up" is somewhat ambiguous and misleading. It would be difficult for a third party to interpret the word "up" when many surfaces—224, 228, and 226—appear to be "up" from the end of the torso. Possibly a word such as "out," "protruding," or "perpendicular" would have been better to describe the direction and angle of the lip,[1] but ultimately it would be easier to just use the drawing itself. This is Lone Wolf's

---

[1] Patent Holder submits a definition from Merriam-Webster's dictionary of lip as "a projecting edge." While this definition comes a little closer, a "projecting edge" extending "up" still does not provide the clarity gained by simply referencing the figures in the '700 patent.

MEMORANDUM DECISION AND ORDER - 9

alternate proposed construction (submitted in the event the Court did not find indefiniteness).

In an abundance of clarity—and because both sides appear to agree—the Court will accept Lone Wolf's alternate proposed construction and define "guide lip" as "the guide angle 224."

2. Control Tab

| Claim | Term | Plaintiff's Proposed Construction | Defendants Proposed Construction |
|---|---|---|---|
| Claim 1 | "said control tab extends along a same axis from said first connector leg" | Plain meaning. "said tab extends or projects from the first connector leg and parallel to the axis of the first connector leg" | Invalid as indefinite with no support or antecedent for axis and therefore also for "said control tab extending along a same axis from said first connector leg." Without waiver of its invalidity position, Defendants assert the following construction: "said control tab protrudes, extends or projects outwardly or away from the adjacent or surrounding surface structure of the first connector leg and parallel to the axis of the first connector leg" |

Claim 1 explains that "extending from said first connector leg is a control tab, **said control tab extends along a same axis from said first connector leg . . . .**" Dkt. 43-2, at 4:61-64 (emphasis added to indicate disputed language). The parties agree that control tab should be defined by its plain meaning as "[a] short protruding structure which projects or extends outwardly or away from the adjacent or surrounding surface structure of the first connector leg," and that first connector leg should be defined by its plain meaning as "a first leg or branch of a trigger connector." Although the parties agree on

MEMORANDUM DECISION AND ORDER - 10

these definitions in isolation, they disagree that these same general definitions should apply to this phrase as a whole. Patent Holder asserts that the definition is sound *because* the parties agree to the definition of control tab and connector leg. Lone Wolf, on the other hand, contends that the word "axis" is not defined anywhere and renders the claim invalid for indefiniteness regardless of the fact that the parties agree on other components within the phrase. Alternatively, Lone Wolf proposes a construction of the phrase that more closely aligns with the other definitions already agreed to.

Using Figure 3 of the '700 patent as an example, Lone Wolf has labeled the various parts with a word description. At issue here, is the item depicted as 230.


Fig. 3

In layman's terms, the dispute is whether item 230 must project outwardly from the connector leg as a separate structure—as is shown in Figure 3 above—or if the connector leg and control tab can be one in the same (i.e. a single plane or surface with no visible projection).

Patent Holder claims that the first connector leg and the control tab are essentially one component that, in the end, serves two purposes. In other words, Patent Holder's

MEMORANDUM DECISION AND ORDER - 11

position is that the top part of the leg (226) *is* the control tab (230), and a separate, distinct protrusion is not necessary under the specifications of the '700 patent. Patent Holder also disagrees with Lone Wolf's assertion that "axis" is indefinite or difficult to understand. The design of the '700 patent—specifically the metal that makes up the torso, the leg, and the tab—is one unified piece and consequently all features are aligned, or situated, along the same axis. See Dkt. 43-2, at 4:37-43. According to Patent Holder, this is precisely why the term "same axis" is used—they are all the same piece, and exist on the same plane and axis.

Lone Wolf first asserts that the axis is indefinite because there is no directional component. Because a three-dimensional object has multiple planes, there are multiple axes—in symmetry with the design and shape of the object itself—and without some directional language, there is no way to know what axis the '700 patent is referring to. Second, Lone Wolf contends that the two features must be separate—i.e. that the control tab (230) must protrude outward from the connector leg (226) as a separate feature.

The Court understands Lone Wolf's axis argument. Exact specifications and details are usually more helpful than not. That being said, the plain language that the tab extends along the "same axis from the connector leg" makes clear that the tab is positioned along the same plane as the leg itself. There is nothing in the intrinsic record, or elsewhere, to support an "alternate axis" theory. The Court finds that the disputed phrase is not invalid for indefiniteness. Even if the claim is not indefinite, however, the Court must determine whether additional interpretation is necessary to aid a jury in understanding the phrase at issue.

Some of the figures submitted by Plaintiff in its Complaint show a product that has a single plane or surface that—presumably—comprises both the connector leg and the control tab. Other figures, however—including those within the '700 patent itself, such as Figure 3 above—clearly show a protrusion. Almost exclusively, when the term "control tab" is described in the '700 patent, it is said to: "*extend[ ]* from the first connector leg." *See e.g.*, Dkt. 43-2, at 1:50-51; 3:30-31. This language—from the patent itself—appears to conclusively determine that the control tab is separate from the connector leg.

The Court must admit some confusion as to Patent Holder's position on this issue. Lone Wolf asserts that Patent Holder's position is that the first connector leg is also the control tab and in some instances Patent Holder does appear to take that position. Importantly, however, Patent Holder's own proposed construction is that the control tab "extends or projects" from the first connector leg. Thus, if it is—or ever was—Patent Holder's position that the two are a single element, Patent Holder's own proposed construction is not necessarily consistent with such an argument. Some of the confusion may be attributable to the fact that this case was originally filed in another district by attorneys no longer involved in the case, but ultimately this discrepancy is of little consequence. At oral argument, Patent Holder agreed that Lone Wolf's proposed construction was an acceptable definition. While the party's definitions are quite similar, Lone Wolf's additions more closely align with the already agreed upon definition of control tab and first connector leg.

Accordingly, the Court accepts Lone Wolf's proposed construction and construes control tab as follows: "said control tab protrudes, extends or projects outwardly or away

MEMORANDUM DECISION AND ORDER - 13

from the adjacent or surrounding surface structure of the first connector leg and parallel to the axis of the first connector leg."

3. Force

| Claim | Term | Plaintiff's Proposed Construction | Defendants Proposed Construction |
|---|---|---|---|
| Claim 8 | "saving a user from exerting a second force after exerting an initial force to pull said trigger." | Plain meaning. Only one necessary force. | Invalid as indefinite. Indefinite as to "second force" and "initial force". |

The final disputed claim is best read in context. Claim 8 of the '700 patent claims "the firearm enhancing trigger control connector set forth in claim 7, further characterized in that said no obstruction is achieved with said first predetermined able for said guide lip, **saving a user from exerting a second force after exerting an initial force to pull said trigger**." Dkt. 43-2, at 5:24-28 (emphasis added to indicate disputed language). It is helpful to refer back to Claim 7 to understand the "said no obstruction" language of Claim 8. Claim 7 reads, in part, "further characterized in that as a trigger is pulled, said trigger bar slidably travels generally in a rearward and downward direction and said guide lip serves to guide a curved end of said trigger bar with no obstruction." *Id.* at 5:19-23.

As the Court previously noted, in the prior art, the guide lip of the enhanced trigger control mechanism was positioned at a 90-degree angle. Thus, when a user pulled the trigger, depending on the shape of the gun's trigger bar—whether straight or angled—this lip might prove to be an obstruction and the user would have to essentially pull harder to "move past" the obstruction in order to discharge the weapon. The guide lip in

MEMORANDUM DECISION AND ORDER - 14

the '700 patent's design, however, is angled, thus enabling a single pulling action[2] without obstruction.

Lone Wolf asserts that Patent Holder does not define "force" anywhere in the patent. Because there are no terms of magnitude or distance to help a user understand what constitutes a force—nor any description of when the initial force is complete and the second force begins—Lone Wolf asserts that this term is invalid. Lone Wolf would like to see exact measurements (such as 1/16th of an inch for example) in order to know when the initial force ends, and the second force begins.

Patent Holder claims that Lone Wolf is overcomplicating the issue. According to Patent Holder, not only is the plain language easy to understand, but this whole process is described in the preferred embodiment of the patent itself, which describes:

> As trigger T is pulled, trigger bar TB slidably travels generally in a rearward and downward direction and guide angle 224 serves to guide curved end 50 with no obstruction. The no obstruction is achieved with predetermined angle B for guide angle 24, saving the user from exerting a second force after exerting an initial force to pull trigger T.

Dkt. 43-2, at 3:52-58. Under the circumstances, the Court must agree. Lone Wolf's argument complicates something that does not need further explanation.

---

[2] It should be noted that there was technically never a "second" pull in the sense that a person would pull once, release, and then pull again. The second pull (or force) was part of the same finger motion. If the lip was obstructing the trigger pull, however, a person would have to use increased force to overcome this obstacle—i.e. the "second force."

Notably, in this case, adding specifics might only confuse the issue further. Lone Wolf appears to recognize this[3] and yet alleges the claim is indefinite because Patent Holder did not delineate when the initial force ends, and the second force begins. Depending on the size and caliber of the gun in question, the physical strength of the person pulling the trigger, and other external forces—such as temperature—the force required could vary, as could the exact moments when the "initial" force and "secondary" force begin. Trying to strictly define the forces appears more problematic than simply leaving the term as written.

The Court is not persuaded by Lone Wolf's indefinite assertion, particularly where no specific evidence has been presented in support. One of the main purposes of the '700 patent—as outlined in the patent itself—is to alleviate the obstruction that sometimes occurred in the prior art as a result of the 90-degree guide lip. There is no need to disseminate, in measurements, the exact force(s) that *were previously required* to move past the obstruction. Claim 8 embodies the product that makes it possible to use a single unified force to pull the trigger. No more, no less. There is no need to further define this term.

## V. ORDER

The Court construes the disputed claims as follows:

1. Guide Lip – "guide angle 224."

---

[3] "With springs, angles and the like all inherent in a trigger pull, *there is a variance in the forces encountered* through the trigger pull." Dkt. 43, at 19 (emphasis added).

2. Control Tab – "said control tab protrudes, extends or projects outwardly or away from the adjacent or surrounding surface structure of the first connector leg and parallel to the axis of the first connector leg."

3. Force – As written in the patent.

DATED: September 27, 2018

David C. Nye
U.S. District Court Judge