# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| PATENT HOLDER, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>LONE WOLF DISTRIBUTORS, INC. and LONE WOLF R&D, LLC,<br><br>    Defendants. | Case No. 2:17-cv-00452-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Pending before the Court is Plaintiff Patent Holder LLC's Motion to Amend/Correct (Dkt. 48) and Defendants Lone Wolf Distributors, Inc, and Lone Wolf R&D, LLC's (collectively "Lone Wolf") two Motions for Summary Judgment (Dkts. 40, 50).[1] On October 23, 2018, the Court held oral argument on all motions and took the matters under advisement. Upon review, the Court now issues the following decision GRANTING Patent Holder's Motion to Amend/Correct, DENYING Lone Wolf's first

---

[1] Filed contemporaneously with these documents was Lone Wolf's Motion to Strike or Compel Amendment to Plaintiff's Original Infringement Contentions. Dkt. 53. Ultimately, Lone Wolf withdrew this motion based upon Patent Holder's amendments to its contentions and substantial compliance with the Local Patent Rules. As a result, this Motion is deemed moot and the Court will not discuss it further.

Motion for Summary Judgment (Dkt. 40), and WITHHOLDING RULING on Lone Wolf's second Motion for Summary Judgment (Dkt. 50) pending further briefing.

## II. BACKGROUND

### A. Procedural Background

On June 20, 2018—prior to the *Markman* hearing in this case—Lone Wolf moved for Summary Judgement. Dkt. 40. The Court temporarily stayed that Motion while the *Markman* issues were underway.

Following the *Markman* hearing, the Court reinstated a briefing schedule for the pending Motion for Summary Judgment. During the *Markman* hearing, Patent Holder indicated that it would be filing a Motion to Amend to correct its infringement contentions. Patent Holder subsequently filed such a motion. Dkt. 48. Lone Wolf then filed a second Motion for Summary Judgment. Dkt. 50. The substance of this second motion is almost identical to the first motion, but it is directed at the product Patent Holder seeks to add by way of its Motion to Amend and adds one additional ground in support of summary judgment as to the first accused product.

### B. Patent at Issue

The sole patent at issue in this case is US Patent 9,404,700 ("the '700 patent"). The '700 patent discloses "a firearm enhanced trigger control connector." Dkt. 43-2, at 1, *abstract*. In layman's terms, the '700 patent discloses an after-market firearm product that, when placed in a Glock handgun, shortens the distance that the trigger must travel to discharge the firearm. Said differently, with such a product installed, the space from where a person begins to pull, or squeeze, the trigger, and the point at which the trigger

actually engages the firing pin is shortened. The purpose of this device is to increase precision and accuracy in shooting.

### III. ANALYSIS

A. **Motion to Amend/Correct**

    a. **Background**

When Patent Holder originally filed this case, its Infringement Contentions alleged that Lone Wolf's product designated as LWD-342 G42/43 (the "342" product) was the sole accused product. By way of the instant motion, Patent Holder seeks to amend its Infringement Contentions to add one more product[2]—Lone Wolf's LWD-342-1 (the "342-1" product)—and four additional claims.

    b. **Legal Standard**

Under the District of Idaho Local Patent Rules, "amendments to the Infringement Contentions or the Invalidity Contentions may be made only by order of the Court upon a timely application and showing of good cause." Dist. Idaho Loc. Patent R. 3.7.

Additionally, under Rule 3.1, a Plaintiff must provide a "claim chart" which identifies "specifically where each limitation of each asserted claim is found within each Accused Instrumentality." Dist. Idaho Loc. Patent R. 3.1.

---

[2] In its Motion, Patent Holder first sought to add three additional products. After the filing of the motion, however, Lone Wolf produced the accused products and following testing and examination, Patent Holder determined that only one of the four products infringes upon the embodiments of the '700 patent. The instant motion seeks to add this single additional product (the 342-1 device).

MEMORANDUM DECISION AND ORDER - 3

### c. Analysis

In opposition, Lone Wolf argues that Patent Holder's Motion is untimely, that it has not met the requisite good cause standard, and that its claim chart is deficient. The Court will briefly address each argument in turn.

#### i. Timeliness

Lone Wolf asserts that Patent Holder's Motion is untimely as the Court has already engaged in claim construction. Lone Wolf is concerned that adding additional claims at this point could result in the Court having to undertake claim construction a second time. This is extremely unlikely. Even with the addition of an accused product and some claims, there are no new claim *terms* that must be decided. Each of the asserted claims are dependent claims—i.e. they are based upon independent claims (specifically claim 1)—which the Court has already construed.

Second, the fact that Patent Holder's current counsel was not the original counsel in this case provides a certain amount of justification for the delay. The fact that it took some time for local counsel to "get up to speed" is not unusual. As will be discussed below, there is good cause for this delay and granting the Motion—even at this "late" stage—will not prejudice Lone Wolf.

From all available information, it does not appear that any additional claim construction will be necessary, and the Court finds that Patent Holder filed its motion in as timely a manner as it could under the circumstances.

#### ii. Good Cause

Next, the Court must determine if good cause exists to allow an amendment to the

MEMORANDUM DECISION AND ORDER - 4

Infringement Contentions in this case. Local Patent Rule 3.7 outlines a *non-exhaustive* list of what constitutes good cause. One of those examples is "recent discovery of material, prior art despite earlier diligent search." Dist. Idaho Loc. Patent R. 3.7(b).

Here, Patent Holder asserts that, until recently, Lone Wolf had not fully responded to its discovery requests. When Lone Wolf did respond, its responses included new and non-public information, which—when reviewed by Patent Holder—allowed it to identify another accused product.

In contrast, Lone Wolf asserts that the newly identified product has been available on its website for many months and, had Patent Holder been diligent, it could have easily identified this product even *before* Lone Wolf responded to the discovery requests. Lone Wolf asserts that Patent Holder had a duty to be thorough, and claims "it would have taken less than 30 seconds to search the Defendants' website to see all of Defendants' connector products." Dkt. 52, at 3. According to Lone Wolf, because Patent Holder could have easily accessed this information earlier, it is now foreclosed from arguing that it amounts to new material. The Court disagrees.

Simply because something is available on a website does not necessarily mean that a plaintiff has had an opportunity (or obligation) to evaluate, test, and research the product (absent purchasing the alleged infringing product itself). Here, Patent Holder— through appropriate and timely discovery requests—received the products and then determined which, if any, might infringe on its '700 patent. It seems that Patent Holder was diligent in all respects.

Additionally, Lone Wolf has been aware of this motion for some time, so it cannot

MEMORANDUM DECISION AND ORDER - 5

be said that its filing is prejudicial in any meaningful way. To be sure, time and expense have been added, but the new accused product (and claims) are closely related to the work that has already occurred in this case. Under the circumstances, it appears there is good cause that justifies Patent Holder's amendments.

### iii. Claim chart

Finally, while it is true that Patent Holder did not originally provide a claim chart as required under Local Patent Rule 3.1, it attached a completed chart to its reply brief. This final objection is therefore moot.

In sum, although filed somewhat later in the case, the proposed amendments will not cause undue delay or prejudice and there appears to be good cause for said delay. Specifically, Patent Holder did not (until recently) have an opportunity to inspect and test Lone Wolf's products to narrow the focus of its Infringement Contentions. There is no indication that Patent Holder was not diligent in all respects, therefore, its Motion to Amend/Correct is GRANTED.

As noted at oral argument, however, granting Patent Holder's Motion may mean that Lone Wolf needs to amend its invalidity contentions. If Lone Wolf elects to do so, the Court would entertain such a Motion.

## B. Motions for Summary Judgment

### a. Legal Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). This Court's role at summary judgment is not "to weigh the evidence and

determine the truth of the matter but to determine whether there is a genuine issue for trial." *Zetwick v. Cty. of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017) (citation omitted). In considering a motion for summary judgment, this Court must "view[] the facts in the non-moving party's favor." *Id.* To defeat a motion for summary judgment, the respondent need only present evidence upon which "a reasonable juror drawing all inferences in favor of the respondent could return a verdict in [his or her] favor." *Id.* (citation omitted). Accordingly, this Court must enter summary judgment if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The respondent cannot simply rely on an unsworn affidavit or the pleadings to defeat a motion for summary judgment; rather the respondent must set forth the "specific facts," supported by evidence, with "reasonable particularity" that precludes summary judgment. *Far Out Productions, Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001).

      **b. Analysis**

Lone Wolf argues the Court should grant summary judgment in its favor on two bases. First, Lone Wolf contends that both accused products do not include a "control tab" as required. Second, Lone Wolf asserts that the 342 accused product does not have an "angle C" within the range of 81 to 91 degrees as required. The Court will address each in turn.

      **i. Control Tab**

The determination that an accused product infringes on a patent requires that the

MEMORANDUM DECISION AND ORDER - 7

Plaintiff prove that the accused product literally includes all the elements of the asserted claim (literal infringement), or alternately, that there is infringement under the doctrine of equivalents.

Claim 1 of the '700 patent explains that "extending from said first connector leg is a control tab, **said control tab extends along a same axis from said first connector leg . . . .**" Dkt. 43-2, at 4:61-64 (emphasis added to indicate disputed language). The parties have agreed from the beginning that "control tab" should be defined by its plain meaning as "[a] short protruding structure which projects or extends outwardly or away from the adjacent or surrounding surface structure of the first connector leg," and that "first connector leg" should be defined by its plain meaning as "a first leg or branch of a trigger connector." The parties disagreed, however, on how this phrase should be construed as a whole. This was one of three claims presented to the Court for claim construction.

In its *Markman* ruling, the Court determined that this specific disputed phrase would be construed as follows: "said control tab protrudes, extends, or projects outwardly or away from the adjacent or surrounding surface structure of the first connector leg and parallel to the axis of the first connector leg." Dkt. 62, at 13-14.

Lone Wolf argues that because there is no identifiable "control tab"—i.e. no projection from the adjacent surface on its accused product—it is not a literal infringer.

Patent Holder disagrees—or at least contends that the question should be presented to a jury. Patent Holder readily recognizes the Court's prior ruling and its own stipulation that the control tab, by definition, requires a protrusion. This aside, Patent Holder alleges that the protrusion can be "closed off" and thus appear as a single plane.

MEMORANDUM DECISION AND ORDER - 8



For example, in the above visual, Patent Holder's two products are the left product in each pair, while Lone Wolf's products are the right product in each pair. Lone Wolf's smaller 342 product (second from left) does not include a protrusion control tab—thus Lone Wolf asserts it is not an infringer. Importantly, however, neither does Patent Holder's smaller product (far left). As for the larger 342-1 design, Patent Holder's product (second from right) has a control tab that clearly "projects" from the surrounding surface while Lone Wolf's product (far right) does not.

This "closed off" control tab idea seems to fly in the face of the Court's *Markman* ruling, as well as the parties' agreed upon construction. However, it also appears to present a factual issue that cannot be decided at summary judgment—or at least pre-discovery summary judgment. At a fundamental level, the fact that *one of Patent Holder's own products does not have a protrusion* indicates that either (1) Patent Holder

should not have agreed to a definition that wrote out one of its own products, (2) one of Patent Holder's own products does not contain a claimed element and thus does not represent a preferred embodiment of its own patent, or (3) the required element can take different physical shapes (i.e. "closed off") but still constitute that element as outlined in the patent. The Court does not know if the decision to close off the control tab on Ghost's[3] smaller product was a result of the size of the product or something else, but the fact remains that in that specific design the upper surface of the connector leg appears to work as a control tab.[4] *See also* Viani Declaration, Dkt. 58, at 2-3. Although attenuated, the Court finds disputed facts as to literal infringement that cannot be resolved at summary judgment.

While Patent Holder's literal infringement claims appear somewhat of a stretch, it also alleges that under the doctrine of equivalents Lone Wolf is nonetheless an infringer.

Broadly speaking, the doctrine of equivalents allows a party to allege that while the accused product may not include an exact structure or element of the patented

---

[3] Ghost Inc. is a company owned by Arthur Viani (inventor of the '700 patent and owner of Patent Holder LLC) which sells, among other items, the accessories embodied in the '700 patent.

[4] Now, the question remains: how does one claim a protrusion without something actually *protruding* from the surrounding surface? Patent Holder appears to argue that the control tab protrudes from the surrounding surface (the connector leg) but then is closed off for whatever reason. In other words, in that specific design *there is no way to visually distinguish between the connector leg and the control tab.* The control tab protrudes (the connector leg would have less depth if it did not) but it protrudes from the entire item evenly, rather than from just a portion of the leg. Said differently, the closed off control tab resembles an extension of the whole surface rather than the open design which looks more like a true "tab."

MEMORANDUM DECISION AND ORDER - 10

product, it may nonetheless infringe on the patented product if there is a "substitute" element that performs the same function, in the same way, to achieve the same result.

As a threshold matter, Lone Wolf asserts that the doctrine of equivalents does not apply in this case because there is no "substitute" element. Relying on *Advanced SteelRecovery, LLC. v. X-Body Equipment, Inc.*, Lone Wolf asserts that "a patentee, bearing the burden of showing equivalence, cannot merely point to other claim limitations to satisfy the doctrine of equivalents. Doing so runs afoul of the 'all-elements rule.'" 808 F.3d 1313, 1320 (Fed. Cir. 2015). Citing other Federal Circuit cases, Lone Wolf alleges that the Court must look at each individual requirement of the asserted patent claim and that applying the doctrine of equivalents to the claim as a whole is impermissibly broad. *See Pennwalt Corp. v. Durand-Wayland, Inc.*, 833 F.2d 931, 935, 4 USPQ2d 1737, 1740 (Fed. Cir. 1987); *Warner-Jenkinson*, 520 U.S. 17, 40 (1997).

Lone Wolf emphasizes that its products do not have a corresponding structure to the control tab in the first place, and further, that the first connector leg and control tab cannot be one in the same, as Patent Holder alleges. In light of the fact that there is no substitute element, Lone Wolf believes the 342 and 342-1 products cannot be said to be infringing on the '700 patent.

In regard to Lone Wolf's argument that the control tab and connector leg cannot be the same structure, the Court notes that in its *Markman* decision, it expressed the same concern:

> The Court must admit some confusion as to Patent Holder's position on this issue. Lone Wolf asserts that Patent Holder's position is that the first connector leg is also the control tab and in some instances Patent Holder does

> appear to take that position. Importantly, however, Patent Holder's own proposed construction is that the control tab "extends or projects" from the first connector leg. Thus, if it is—or ever was—Patent Holder's position that the two are a single element, Patent Holder's own proposed construction is not necessarily consistent with such an argument.

Dkt. 62, at 13. That being said, the Court also noted that there was a discrepancy in that "some of the figures submitted by Plaintiff in its Complaint show a product that has a single plane or surface that—presumably—comprises both the connector leg and the control tab. Other figures, however—including those within the '700 patent itself, such as Figure 3 above—clearly show a protrusion." *Id.*

Here, Patent Holder is taking the position that even if the individual elements are different (even by definition), under the doctrine of equivalents and the theory that the functionality is the same, the top of the connector leg can act as the control tab and is the substitute element. Additionally, as just noted, there appears to be at least one Ghost (Patent Holder) product that conforms with this interpretation.

For its part, Patent Holder is not particularly concerned with these nuances, as it believes Lone Wolf is being too myopic in its interpretation of the doctrine of equivalents.

First, citing *Warner-Jenkinson*, Patent Holder explains that there are, in fact, two avenues for determination of infringement under the doctrine of equivalents: (i) the "insubstantial differences" test and (ii) the "triple identity test." The insubstantial differences test looks to whether the element asserted to be an equivalent in the accused device is substantially different from the claimed element. The triple identity test focuses

on: (i) the function served by a particular claim element; (ii) the way that element serves that function; and (iii) the result obtained by that element.

Here, Patent Holder asserts that there are not really any substantial differences in the elements and that the overall function—particularly the result—is the same between both products. Said differently, Patent Holder asserts that both *Warner-Jenkinson* approaches show that Lone Wolf's products are infringing under the doctrine of equivalents.

In support of this proposition, Patent Holder cites extensively from the Declaration of Arthur Viani (inventor of the '700 patent and owner of Patent Holder LLC, and Ghost Inc.). Viani testifies that the accused devices utilize the upper surface of the connector leg (i.e. the surface on the same axis as the control tab) to act in the same manner as the control tab, namely, contacting the cross edge of the trigger bar to prevent over travel. Dkt. 58, at 2-3. Viani concludes that this "closed off control tab" performs *the very same function in the very same way to achieve the very same result* as claimed in the patent. *Id.* (emphasis added). Importantly, Viani explains that his company "closes off" the control tab on smaller devices (such as the 342), however, the functionality remains the same. *Id.*

Lone Wolf vehemently opposes Patent Holder's position that the control tab or hybrid connector leg/control tab serve the same intended purpose of stopping the trigger bar as it moves backward. In his declaration, Daniel Shepard (Lone Wolf's president and owner) claims that in its products, the connector leg/control tab *never touches* the trigger bar. Dkt. 63-1, at 2. In summary, Lone Wolf argues that its products have no control tab to begin with, but also no substitute element that serves the function of reducing over

MEMORANDUM DECISION AND ORDER - 13

travel. These competing opinions, however, appear to create a disputed material fact that renders summary judgment improper.

Second, Patent Holder strongly disagrees with Lone Wolf's position that under a doctrine of equivalents analysis each element must be analyzed—or even present—in order to apply. Patent Holder alleges that the absence of a claimed element is precisely why the doctrine of equivalents is relevant. The "substitute element" need not be a separate physical structure—in fact it could be missing altogether—and another structure or element could perform the stated function. The Court must agree.

The Federal Circuit has explained this "element by element" rule of *Warner-Jenkinson*, in connection with the concept of "vitiation" which is a "legal determination that the 'evidence is such that no reasonable jury could determine two elements to be equivalent.'" *Deere & Co. v. Bush Hog, LLC*, 703 F.3d 1349, 1356 (Fed. Cir. 2012) (quoting *Warner-Jenkinson*, 520 U.S. at 39 n. 8). The Federal Circuit cautioned against strict application of the "element by element" rule:

> Courts should be cautious not to shortcut this [equivalence] inquiry by identifying a 'binary' choice in which an element is ether present or 'not present.' Stated otherwise, the vitiation test cannot be satisfied by simply noting that an element is missing from the claimed structure or process because the doctrine of equivalents, by definition, recognizes that an element is missing that must be supplied by the equivalent substitute. If mere observation of a missing element could satisfy the vitiation requirement, this 'exception' would swallow the rule. And, the Supreme Court declined to let numerous contentions bury the doctrine. Thus, preserving the doctrine in its proper narrowed context requires a court to examine the fundamental question whether there is a genuine factual issue that the accused device while literally omitting a claim element, nonetheless incorporates a equivalent structure.

*Id.* at 1356-1357 (quoting *Warner-Jenkinson*, 520 U.S. at 21, 40). The Federal Circuit continued to contrast "vitiation" from questions of fact for the jury. Vitiation is when "the evidence is such that no reasonable jury could determine [the] two elements to be equivalent." *Id.* at 1356. That is, "courts properly refuse to apply the doctrine of equivalents 'where the accused device contain[s] the antithesis of the claimed structure . . . . In such a case, application of the doctrine of equivalents would 'vitiate' a claim element." *Id.* (quoting *Planet Bingo, LLC v. Game Tech. Int'l, Inc.*, 472 F.3d 1338, 1345 (Fed. Cir. 2006); *Walter-Jenkinson*, 520 U.S. at 39 n.8). By contrast, a trial is required if a jury could find an "'insubstantial difference' from the claimed element, or 'whether the substitute element matches the function, way, and result of the claimed element.'" *Id.* (internal citation omitted).

In this case, Patent Holder is not—as Lone Wolf suggests—"merely point[ing] to [an]other claim limitation[] to satisfy the doctrine of equivalents," *see Advanced Steel Recovery*, 808 F.3d at 1320, because its position is that the upper part of the connector leg performs the task of the control tab—i.e. that portion of the connector leg *is* the substitute element. This is not the warned of "generalized testimony as to the overall similarity between the claims" *id.* but a purported true substitute element under the doctrine of equivalents—albeit an element that also has its own independent function (as a connector leg). As noted in *Deere*, this case presents the "genuine factual issue [of whether] [] the accused device while literally omitting a claim element, nonetheless incorporates an equivalent structure." *Deere,* 703 F.3d at 1357.

Finally, the parties disagree on whether the prosecution history in this case acts as a bar to the doctrine of equivalents. Prosecution history estoppel applies when the applicant has amended a proposed claim and that amendment was made to address a question of patentability. *Festo v. Shoketsu,* 535 U.S. 722 (2002). To be sure, Patent Holder acknowledges that prosecution history estoppel is a limit on the doctrine of equivalents but asserts that it does not apply in this case.

In a January 14, 2016, response to a USPTO office action rejection based on double patent due to a co-pending application, Viani (as the Patent Owner) amended Claim 1 to include an additional limitation that *said control tab extends along a same axis from said first connector leg.* Lone Wolf contends that this limitation—that the control tab "extends" along the same axis—means (again) that these are separate elements and that Patent Holder is bound by this admission. Patent Holder counters that the control tab has always been present, the additional language simply clarified the placement of the tab—"along the same axis as the connector leg"—and no limitation should be read into that. The Court agrees. It does not appear that this limited prosecution history would act as a bar to a doctrine of equivalents defense. The added phrase itself continues to be controversial, but this amendment appears to have been more of a clarification rather than a limitation.

In conclusion, it does appear that a reasonable person—or jury—*could* determine that either (1) the elements are the same (there is a control tab, it is just closed off sometimes) and there has been literal infringement, or (2) there is not a control tab per se at all, *but* there is a substitute element that performs the same function, in the same way,

MEMORANDUM DECISION AND ORDER - 16

and with the same result and there has been infringement under the doctrine of equivalents. Accordingly, summary judgment is not appropriate at this time.

### ii. Angle C

While the above ground for summary judgment applied to both the 342 and 342-1 products, this last theory only applies to the 342 product.

Claim 1 of the '700 patent requires that the "first connector leg [have] a disconnector tab (228) at a third predetermined angle ("C") approximately between 81 degrees and 91 degrees with respect to said first connector leg (226)." Angle "C" is at the top of the device (highlighted) below.



Fig. 3

According to Lone Wolf, the 342's "third predetermined angle ("C")" is ninety-seven (97) degrees and because 97 degrees does not fall within the 81 to 91-degree range as required in the '700 patent, the 342 is not an infringing product. Conversely, Patent Holder alleges that the third predetermined angle of the 342 device is actually 89 degrees and does fall within the '700 patent.

This large discrepancy seems unlikely considering the sophistication of the parties and the instruments used to measure such angles. Immediately preceding oral argument, and at oral argument, the parties conferred and discovered the reason behind the inconsistent results. Apparently when measuring angle C, Lone Wolf measured the inside, or interior space, of angle C while Patent Holder measured the outer surface, or back side, of angle C.

In light of this discovery, Lone Wolf filed a "sur-reply" (Dkt. 66) to its second motion for summary judgment detailing its opinion that Patent Holder's measurements are unsupported and that the '700 patent indicates that measurements are always taken on the inside of the predetermined angles. Patent Holder objects to Lone Wolf's sur-reply as improper under this District's Local Rules and claims that the '700 patent does not specify how angles are to be measured or determined. At the very least, Patent Holder requests that if the Court were to consider Lone Wolf's sur-reply, it should be given a chance to fully respond with evidence and briefing.

While the Court's local rules do not necessarily contemplate sur-replies, there are times when they become necessary. A common scenario in which the Court allows sur-replies is when a party brings up new information for the first time in a reply brief. Here, the "new information" was essentially raised at summary judgment and neither party had time to adequately respond. The Court finds that this unique situation warrants additional briefing. Accordingly, the Court reserves judgment on this theory of summary judgment until Patent Holder has an opportunity to fully respond.

# IV. CONCLUSION

"Infringement, whether literal or under the doctrine of equivalents, is a question of fact." *Advanced Steel Recovery*, 808 F.3d at 1317 (citing *Absolute Software, Inc. v. Stealth Signal, Inc.*, 659 F.3d 1121, 1129–30 (Fed. Cir. 2011). Summary judgment on the issue of infringement is only proper "when no reasonable jury could find that every limitation recited in a properly construed claim either is or is not found in the accused device either literally or under the doctrine of equivalents." *PC Connector Sols. LLC v. SmartDisk Corp.*, 406 F.3d 1359, 1364 (Fed. Cir. 2005). Here, Lone Wolf has not met its burden. There are material facts as to whether Lone Wolf's 342 and 342-1 products infringe Patent Holder's '700 patent either literally or under the doctrine of equivalents. These issues must be presented to a jury for determination.

As to Lone Wolf's "angle C" argument, the Court will rule (without oral argument) once it receives Patent Holder's supplemental briefing on the matter. As this fundamentally changes the structure of Lone Wolf's Motion (Dkt. 50) the Court will allow it an opportunity to reply to Patent Holder's brief (even though such amounts to a second sur-reply).

# V. ORDER

**IT IS ORDERED:**

1. Patent Holder's Motion to Amend/Correct (Dkt. 48) is GRANTED.
2. Patent Holder's Motion for Summary Judgment (Dkt. 40) is DENIED. There are disputed facts as to whether there has been literal or equivalent infringement.

MEMORANDUM DECISION AND ORDER - 19

3. The Court WITHHOLDS RULING on Patent Holder's Motion for Summary Judgment (Dkt. 50) until all briefing has been received.[5] Patent Holder's brief in opposition to Lone Wolf's sur-reply (i.e. a supplemental brief in opposition to the second motion for summary judgment) is due within 21 days of the date of this order and shall not exceed 10 pages. Lone Wolf will then have 7 days to file a final reply—if desired—which may not exceed 5 pages.

DATED: December 13, 2018

David C. Nye
U.S. District Court Judge

---

[5] Hopefully it is clear from this decision, but the Court is rejecting Lone Wolf's "control tab" summary judgment argument. While this was mostly addressed in Lone Wolf's first Motion for Summary Judgment, it was also addressed in Lone Wolf's second Motion for Summary Judgment. This second Motion, however, mostly focuses on the "angle C" argument. Thus, the Court has determined that Dkt. 40 is Denied and Dkt. 50 remains yet to be determined. However, insofar as the second motion overlaps the first in relation to the control tab issue, those portions are obviously denied consistent with this decision.